UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY      PLAINTIFF

v.      CIVIL ACTION NO. 3:06-CV-281-S

NEWBURG CHIROPRACTIC, P.S.C.,
CANE RUN CHIROPRACTIC, P.S.C., and
MICHAEL PLAMBECK      DEFENDANTS

## MEMORANDUM OPINION

    This case involves an insurer (State Farm) seeking to recoup monies paid to several chiropractic offices on the ground that their practices were unlicensed at the time of the payments, and that State Farm never would have paid the claims had it known this fact. The defendants (Newburg Chiropractic, P.S.C.; Cane Run Chiropractic, P.S.C.; and their principal, Michael Plambeck, D.C.) have moved for partial summary judgment, and State Farm has done likewise with respect to one of its claims against Plambeck.

**I.**

    The pertinent facts here are not substantially in dispute: Although Plambeck held a chiropractic degree, he allowed his Kentucky chiropractic license to lapse for over a decade before being reinstated on May 2, 2005. He nonetheless operated chiropractic clinics during the period when he held no Kentucky license: first as the Newburg Chiropractic Clinic (an unincorporated entity), and then as the owner of the co-defendant P.S.C.s after they were incorporated in February 2004.[1] Kentucky law requires that a person be licensed in order to practice chiropractic or to "hold

---

[1] Defendants claim that ownership of both P.S.C.s was actually held by a licensed chiropractor (rather than Plambeck) at the relevant times, but this fact (which State Farm disputes) does not bear on the present motions.

himself out to be a doctor of chiropractic," and specifically states that "[o]wnership or operation of a chiropractic facility within this state constitutes the practice of chiropractic requiring licensure." KRS 312.018(1), 312.145(3). Plambeck's role in the chiropractic businesses involved in this litigation thus appears to have been illegitimate under Kentucky law. State Farm was evidently unaware of this fact, and between January 1, 2000 and the date of Plambeck's re-licensing it paid him and his companies several hundred thousand dollars for treatment provided under its insurance policies.[2] After learning that Plambeck had not been licensed in Kentucky, State Farm filed suit against the P.S.C.s. It then discovered that they had only recently been organized and amended its complaint to state a claim against Plambeck in his capacity as proprietor of the unincorporated clinic that preceded the P.S.C.s. After discovery, the parties submitted cross-motions for summary judgment.

A party moving for summary judgment has the burden of showing that there are no genuine issues of material fact and that the movant is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes

---

[2] These services were rendered both to State Farm's own customers and to third parties for whose treatment it was obligated to pay under its no-fault personal injury protection policies.

it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in the light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Sitting in diversity (the parties are citizens of different states, and more than the $75,000 jurisdictional minimum is at stake), the Court will apply Kentucky substantive law to resolve the questions at hand. *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 573 (6th Cir. 2008) *(citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

## II.

In seeking summary judgment, the defendants raise a number of different arguments. We address them in turn.

## A.

Plambeck first argues that the claims against him are time-barred. Statutes of limitations are considered substantive (rather than procedural) law for present purposes, and Kentucky statutes of limitations (and other related law) therefore apply. *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945); *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994).

Plambeck argues that the two-year limitations period established by KRS 304.39-230(6) governs because the case against him is an "action for tort liability not abolished by KRS 304.39-060." However, Kentucky law is to the contrary: "the two-year statute of limitations does not apply to a basic reparation obligor, but only to the institution of suit by an injured person or those who are entitled to survivor benefits." *Gray v. State Farm Mut. Auto. Ins. Co.*, 605 S.W.2d 775, 776 (Ky. Ct. App. 1980). We therefore think that the five-year period for cases of fraud or mistake applies to the

claims in this case. KRS. 413.120(12). That time period runs from the accrual of the cause of action, which in turn does not occur "until the discovery of the fraud or mistake." KRS 413.130(3). State Farm avers that it did not discover that Plambeck had been unlicensed until May 2, 2005; if that is the relevant date, it is plain that its action was timely filed.

Although the statute's language seems to clearly indicate that the relevant date is that of *actual* discovery, the Kentucky courts have consistently interpreted the discovery rule to mean (in the absence of a confidential relationship between the parties) the date on which, "in the exercise of reasonable diligence, [the fraud or mistake] should have been discovered." *Hernandez v. Daniel*, 471 S.W.2d 25, 26 (Ky. 1971). *See also, e.g.*, *Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007); *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000); *Louisville Trust Co. v. Johns-Manville Products*, 580 S.W.2d 497, 501 (Ky. 1979). Plambeck therefore argues that State Farm should have, had it been reasonably diligent, discovered that he was unlicensed long before 2005. After all, KRS 312.145(1) dictates that a chiropractor's license be made available for inspection by the general public, and an online directory of chiropractor licenses has been available since at least 2004.[3]

However, we do not think that reasonable diligence required State Farm to investigate the legality of the defendants' businesses. An insurer is generally entitled to rely on obedience to the law, especially where (as here) it had no reason to think that the party it was paying was not duly licensed until well after it had made the payments in question. State Farm is not under a duty to inquire into the truthfulness of the implicit representation of professional status made in claims

---

[3] The Court retrieved a report of Dr. Plambeck's licensure status in a matter of seconds at the Kentucky Board of Chiropractic Examiners's website, http://kbce.ky.gov (follow "online database" hyperlink to search form).

submitted for payment, regardless of the ease of such an inquiry. All the claims here arose under the Kentucky Motor Vehicle Reparations Act (MVRA), the stated purposes of which are to "provide prompt payments to victims of motor vehicle accidents" and to "encourage prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of needed medical care and rehabilitation." KRS 304.39-010(2), (3). The aggregate inefficiency of forcing insurance companies to check into the professional qualifications of every provider would seriously hinder these purposes. Construing the reasonableness requirement with this in mind, we cannot conclude that State Farm was unreasonable in failing to check the status of Plambeck's license every time it paid a bill. The limitations clock therefore did not start to run until State Farm actually discovered Plambeck's status in May 2005. All of its claims here were timely filed.

## B.

The defendants collectively argue that (to quote the title of the relevant section) "Kentucky public policy does not support recovery of State Farm's payments to Newburg and Cane Run." (Defs.' Br. in Support of Summ. J. 8.) Defense counsel has, however, aimed this barb at the wrong target: State Farm relies on public policy concerns only in Count I of the complaint, which demands declaratory relief and makes no mention of recovering payments. And if the defense means to argue that public policy precludes this Court from recognizing the causes of action asserted in Counts II and III, it has failed to provide a legal basis for such a holding. This argument lacks meaningful content and deserves no further attention.

## C.

Many of the bills that State Farm paid were the result of auto accidents caused by tortious actions or negligence on the part of other drivers, from whom State Farm had a statutory right of

recoupment (so as to shift the cost of an accident onto the responsible party). Defendants argue that State Farm should not be permitted to recover in this suit any sums that it has thus already secured through subrogation. The Court and the parties here agree, and any amount awarded to State Farm will be limited to losses for which it has not otherwise been compensated.

Relatedly, the defense argues that by seeking subrogation, State Farm waived its right to recover in this action. Waiver is a voluntary and intentional surrender of a known right, which may be express or implied. It will not, however, be inferred lightly. *Am. Gen. Home Equity, Inc. v. Kestel*, 253 S.W.3d 543, 553-54 (Ky. 2008). Here, State Farm is invoking a right to recoup claims paid as a result of misrepresentation or mistake. It could not have known of that right until it knew of Plambeck's lack of a license. Its subrogation claims appear to have been initiated before the date on which it learned of this fact. (If it sought subrogation after that date, the defendants have provided no evidence.) Because State Farm did not know of its rights at the time it sought subrogation, it could not have waived them.[4] Summary judgment is not appropriate on this basis.

### D.

Defendants' major argument is that KRS 304.39-210(4) is the plaintiff's exclusive remedy in cases arising out of the MVRA. That subsection provides, in pertinent part:

> A reparation obligor may bring an action to recover benefits which are not payable, but are in fact paid, because of an intentional misrepresentation of a material fact, upon which the reparation obligor relies, by the insured or by a person providing an item of medical expense.

---

[4] The Court expresses no view as to whether seeking subrogation would have waived those rights had State Farm been aware of them.

Because all of the claims in this case arose under the MVRA, defendants argue that the existence of this remedy bars recovery under any other theory of liability. If successful, this would do away with virtually all of the complaint's allegations and leave State Farm with a single avenue for relief.

Defendants rest their argument on the "*expressio unius*" canon, but this reliance is misplaced. That rule of construction holds that "the enumeration of particular things excludes the idea of something else not mentioned." *Kearney v. City of Simpsonville*, 209 S.W.3d 483, 485 (Ky. Ct. App. 2006) (*quoting Smith v. Wedding*, 303 S.W.2d 322, 323 (Ky. 1957)). But we do not have an "enumeration" here. Rather, we have a legislatively-defined cause of action. In *Kearney*, cited by the defense, the court treated the fact that the Kentucky General Assembly had not specifically excluded local elected officials from being considered "employees" as tantamount to a statement that no such exemption existed. 209 S.W.3d at 485. The question was whether a person was covered by a definition, not whether a cause of action existed.[5] *Expressio* is concerned with questions of inclusion in or exclusion from statute's coverage. Defendants' attempt to convert this venerable canon of construction into a rule of preemption is in error.

That is not to say that a statute may not preempt common-law causes of action. However, "[a]ny repeal of common law must be clear and expressed. . . . Section 233 of the Kentucky Constitution provides that the common law remains in effect until repealed or clearly altered by a specific legislative act." *Commonwealth Natural Res. & Envtl. Prot. Cabinet v. Neace*, 14 S.W.3d 15, 19 (Ky. 2000) (*citing Benjamin v. Goff*, 236 S.W.2d 905 (Ky. 1951)). Although the statute at issue here does not explicitly abrogate the preexisting common law, Kentucky law also provides that "where a statute both declares the unlawful act and specifies the civil remedy available, the

---

[5] Similar analysis applies to distinguish *Lewis v. Jackson Energy Co-op. Corp*, 189 S.W.3d 87 (Ky. 2005).

aggrieved party is limited to the remedy provided by the statute. General damages are not available when a specific remedy is provided . . . ." *Foster v. Kentucky Farm Bureau Mut. Ins. Co.*, 189 S.W.3d 553, 557 (Ky. 2006) (*citing Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985)). Read in light of *FB Ins. Co. v. Jones*, 864 S.W.2d 926, 929 (Ky. Ct. App. 1993), this holding does not apply where two statutes or causes of action "address different kinds of culpable behavior." *See Garrett v. State Auto Prop. and Cas. Ins. Co.*, No. 3:09-CV-404, slip op. at 6-7 (W.D. Ky. Dec. 18, 2009).

Under *Foster*, we think that all of State Farm's causes of action are sufficiently distinct to avoid preclusion. Count I seeks declaratory relief to the effect that any contracts that State Farm made with the defendants while Plambeck was unlicensed are void and unenforceable, and that, going forward, State Farm owes them no money either under those contracts or under Kentucky insurance law. Count II asserts that State Farm's past payments to the defendants were made either (under KRS 304.39-210(4)) as a result of intentional misrepresentations made by the defendants and relied on by the State Farm, or as a result of mistakes on State Farm's part. While the two are related, it is nonetheless the case that the former involves wrongdoing on the part of the defendant while the latter involves only an error on the part of the plaintiff. Indeed, a mistake claim need not involve an "unlawful act," and therefore does not fall under *Foster*'s language. Count III alleges that State Farm paid claims submitted by the defendants that it later discovered to have been improperly billed, for services that were not medically necessary, and/or for services that were not causally related to accidents covered by its insurance policies. This cause of action requires no proof of misrepresentation, and is not barred by subsection 210(4)'s existence. Accordingly, we hold that none of State Farm's claims fail on the ground that it is limited to a single statutory remedy for its alleged losses.

**E.**

Defendants seek summary judgment on Count II to the extent that it relies on KRS 304.39-210(4), arguing that State Farm cannot prove the elements of the cause of action. To recover, State Farm must prove (1) that it paid benefits that were not payable; (2) that it did so because the defendant intentionally misrepresented a material fact; and (3) that it relied on that misrepresentation in deciding to pay the benefits. Although they raise similar defenses, at this point we must draw a distinction between Plambeck himself, who operated as a sole proprietor from January 2000 to February 2004, and the P.S.C.s he later established.

**(1)    Plambeck**

Plambeck does not argue that the fees he received were not payable, apparently conceding the first element. Instead, he first argues that there is no evidence of intentional misrepresentation. However, State Farm has provided several bills (out of alleged hundreds), submitted to it by Newburg Chiropractic (the trade name under which Plambeck operated his sole proprietorship), with Plambeck's Social Security number listed as the federal tax identification number, requesting payment for services rendered prior to February 2004. There is, of course, no legal distinction between the sole proprietor and a business he operates; lacking the benefits of corporate form, his liability for the business's debts is unlimited. Billing for chiropractic services constitutes the "operation of a chiropractic facility" within the meaning of KRS 312.145(3), meaning that a license is required to do so. By submitting bills to State Farm under his trade name, Plambeck implicitly represented that he was fully licensed and legally authorized to do business as a chiropractor. That representation was false. Filing a bill for payment is an intentional act. The Court is left to conclude

that by submitting the bills in the name of Newburg Chiropractic, Plambeck intentionally misrepresented the true status of his licence.

There is apparently no question that the misrepresentations were material or that State Farm actually relied on them. Plambeck instead attacks the reasonableness of that reliance. He argues that State Farm could easily have checked Plambeck's license, so its reliance on the implicit statement that he had one was unreasonable. This, he says, precludes recovery. In support, Plambeck cites *Mayo Arcade Corp. v. Bonded Floors Co.*, 41 S.W.2d 1104, 1109 (Ky. 1931) (*cited in Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1447 (6th Cir. 1993); *Bassett v. NCAA*, 428 F. Supp. 2d 675, 684 (E.D. Ky. 2006), *aff'd*, 528 F.3d 426 (6th Cir. 2008)) for the proposition that "[i]f the truth or falsehood of the representation might have been tested by ordinary vigilance and attention, it is the party's own folly if he neglected to do so, and he is remediless." We think, however, that the case at bar is distinguishable from *Mayo Arcade* and the cases referencing it. *Mayo Arcade* was a case at equity for the reformation of a contract: The buyers sought the elimination of a section of the contract disclaiming liability for linoleum laid directly on concrete and the substitution of a five-year guarantee that the seller had orally promised. The court refused to grant this relief because (*inter alia*) the plaintiffs had been negligent in failing to examine the written document closely; they could not claim fraud where they were capable of understanding the terms but had failed to do so. *Coffey* involved a plaintiff who purchased a business only to find that the seller had overstated its assets. The court quoted *Mayo*'s rule but ultimately refused to enter summary judgment because there was an issue of material fact as to whether the plaintiff could have discovered the overstatement through ordinary diligence. Finally, in *Bassett*, the plaintiff asserted a common-law fraud claim, as to which

the court granted summary judgment on the ground that he knew or should have known that the alleged misrepresentations were false, and therefore could not reasonably have relied upon them.

Those cases all involved forms of common-law fraud. This case is different in that we have a statute whose plain terms make no mention of reasonableness. It is an open question, unaddressed by the Kentucky courts, whether the common-law reasonableness requirement was incorporated *sub silentio* into the statute's terms.

However, regardless of how the statute is interpreted, it is the Court's view in this case that State Farm's reliance on Plambeck's implicit representations was entirely reasonable, even given the public availability of chiropractic licensing records. *See* Part II.A, *supra*. Consequently, summary judgment is not warranted with regard to the claim against him under KRS 304.39-210(4).

**(2)    The P.S.C.s**

With respect to the incorporated entities that did business starting on February 16, 2004, the analysis is different. After that date, it was no longer Plambeck himself, under his own or an assumed name, issuing the bills. Rather, the corporations—separate legal "persons"—issued them. And while it is true that "corporations are to be deemed and taken as persons when the circumstances in which they are placed are identical with those of natural persons expressly included in the statute," *Maysville Transit Co. v. Ort*, 177 S.W.2d 369, 371 (Ky. 1944), this rule does not extend to licensing requirements. 1 Fletcher Cyclopedia of the Law of Private Corporations § 7.05 (Perm. ed. 1999) ("A corporation is not a 'person' so that it may be licensed to practice medicine, or law, or any other profession similarly calling for natural personal qualifications."). Consequently, the invoices issued in the name of either of the P.S.C.s did not necessarily contain any directly implied representations regarding Plambeck's licensing status.

They did, however, imply (by the same sort of logic as that discussed above) that the P.S.C. that filed each bill was properly organized and operating within the law at the time of submission. We therefore turn to KRS Chapter 274, which governs professional service corporations. We begin with KRS 274.015, which requires that each incorporator and shareholder be a "qualified person," which KRS 274.005(4) defines as anyone eligible to own shares of the P.S.C. In turn, KRS 274.017 restricts issuance and transfer of such shares to (*inter alia*) "[n]atural persons who are authorized by law in this state *or in any other state or territory* of the United States or the District of Columbia to render a professional service permitted by the articles of incorporation of the corporation" (emphasis added). While Plambeck (the sole incorporator and initial shareholder) was not licensed in Kentucky at the time of the P.S.C.s' formation, it is apparently uncontested that he was properly licensed elsewhere in the country. (Geissner Aff. ¶3; Def.'s Br. 2.) Because the invoices were in the name of the P.S.C.s, the only representation they made with respect to Plambeck was that he was licensed *somewhere*—which was true.[6] After the P.S.C.s had been incorporated, there therefore do not appear to have been any misrepresentations at all upon which State Farm could have relied. While State Farm is, as we have said, entitled to rely on obedience to the law, application of that rule to the P.S.C.s' statements leads to an implication only of something that was true. Without any misrepresentation, State Farm's claims against the P.S.C.s under KRS 304.39-210(4) must fail.

**F.**

State Farm also seeks recovery on the theory that its payments to the various defendants were made by mistake. All of the parties request summary judgment as to this charge, though State Farm's

---

[6] Plambeck's ownership of the P.S.C.s did constitute "the practice of chiropractic requiring licensure," KRS 312.145(3), but that is a personal violation of the licensing requirements. The P.S.C.s' statements in the bills did not imply that he had a Kentucky license and were not false.

motion is limited to Plambeck. We address State Farm's motion and Plambeck's together before moving on to the other defendants.

Kentucky courts have stated that:

> It is the settled rule in this state, adopted at an early date and followed by a long line of decisions, that whenever, by a clear or palpable mistake of law or fact essentially bearing upon and affecting the contract, money has been paid without consideration, which, in law, honor or good conscience, was not due and payable, and which, in honor or good conscience ought not to be retained, it may and ought to be recovered.

*Supreme Council, Catholic Knights of America v. Fenwick*, 183 S.W. 906, 910 (Ky. 1916) (*quoted in Phoenix Indemnity Co. v. Steiden Stores*, 267 S.W.2d 733, 734 (Ky. 1954)). *See also Riverside Ins. Co. v. McDowell*, 576 S.W.2d 268, 269 (Ky. Ct. App. 1979) (affirming this rule's vitality in Kentucky without elaboration). *Phoenix Indemnity*, in turn, refers us to K. A. Drechsler, Annotation, *Right of Insurer to Restitution of Payments Made Under Mistake*, 167 A.L.R. 470, 472 (1947), which holds that restitution is not available if "the payee has so changed his position that it would be unjust to require a refund." This is, we suppose, the basis for *Fenwick*'s requirement that the money have been paid without consideration: if the counterparty has already provided a valuable product or service in exchange for the money it received, he has changed his position and it may be unjust to demand that he return the insurance payment. "[R]estitution," the annotation tells us, "is granted only where it is equitable so to do." Seizing on this principle, defendants attack this cause of action on the ground that the chiropractic services in question were in fact performed, that at least some (perhaps all) of the services were performed by chiropractors who were themselves personally licensed, and that therefore the money was not "paid without consideration."

In order to address this argument, we first observe the following: Kentucky courts hold (as is generally well understood) that "a contract is void *ab initio* if it seriously offends law or public

policy." *Commonwealth v. Whitworth*, 74 S.W.3d 695, 700 (Ky. 2002) (*citing* Black's Law Dictionary 1568 (7th Ed. 1999)). One particular application of this principle is the rule that where "a party is prohibited from doing an act because of his failure to comply with a licensing, registration or similar requirement, a promise in consideration of his doing that act or of his promise to do it is unenforceable on grounds of public policy" if the licensing requirement has a regulatory purpose that clearly outweighs the interest in enforcing the contract. Restatement (Second) of Contracts § 181. *See also Kennoy v. Graves*, 300 S.W.2d 568, 569 (Ky. 1957) (applying this rule); *Bd. of Educ. v. Elliott*, 276 Ky. 790, 794 (Ky. 1939) (same). As a corollary, we think that providing unlicensed chiropractic services is so contrary to the public policy behind requiring such licenses (i.e. ensuring that practitioners are duly trained and qualified) that it cannot constitute good consideration for purposes of *Fenwick*'s mistake rule.

This leads naturally to the conclusions that any benefits associated with chiropractic services rendered by Plambeck while he was unlicensed were not payable and that the services themselves did not constitute good consideration. If State Farm, lacking knowledge of the status of his license, paid such bills by mistake, it is entitled to recoup the funds. That much is obvious.

A trickier problem comes with the recognition that at least some of the chiropractic services performed while Plambeck was operating as a sole proprietor were rendered by chiropractors with valid licenses. (As noted above, we have only a sampling of the alleged hundreds of bills; it is not possible to say what proportion of the 2000-2004 bills were for services performed by someone other than Plambeck.) It is hard to see how those services would not count as valid consideration: the person who performed them had adequately demonstrated to the state that he was qualified and competent to do so. The public had been protected from the risk of harm associated with unlicensed

practitioners, and there is nothing in the record to show that the patients were unsatisfied with the treatment they received. So there is something to the defendants' argument that valid consideration was furnished, and that restitution is therefore no longer available even if State Farm could have refused to pay the bills when they were issued on the ground that Plambeck was unlicensed.

But recall that restitution is in essence an equitable remedy. Plambeck had no right to issue invoices or collect fees for chiropractic services: Such activities constitute the practice of chiropractic, and they therefore require licensure. He should not be permitted to profit from this illegal activity. While it is true that the clinic's patients (and thus in some sense State Farm) received good consideration for the insurance payments, allowing State Farm to recover here would not adversely affect either of the innocent parties: The patients have already been treated, and the licensed practitioners have (we suppose) already been compensated for their work through salary and/or other benefits. Plambeck operated a chiropractic facility without a license at his own risk, and the equities of the case are against him. We therefore hold that State Farm is entitled to recover any fees it paid to Plambeck during the period beginning in 2000 when he operated as a sole practitioner. The result of this ruling is that Plambeck's motion for summary judgment will be denied, and that State Farm's motion will be granted in part: The record does not contain full proof of damages, so the burden is still on the plaintiff to prove its losses.

With respect to the P.S.C.s, the equitable considerations that led the court to find for State Farm do not apply. They were operating legally, if not perhaps entirely above-board, and for the reasons explained above could not have induced a reasonable mistake in State Farm by making only true representations. Moreover, the services rendered by licensed chiropractors constituted good consideration for the reasons just explained, and the corporations were in good legal standing to bill

and collect payment for their services. Consequently the plaintiffs' mistake claims must fail with respect to the P.S.C.s, and summary judgment is warranted.

\* \* \*

The Court will enter a separate order consistent with this opinion.

Charles R. Simpson III, Judge
United States District Court