UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY        PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:06-CV-281-S

NEWBURG CHIROPRACTIC, P.S.C.,
CANE RUN CHIROPRACTIC, P.S.C., and
MICHAEL PLAMBECK                                      DEFENDANTS

**MEMORANDUM OPINION**

The initial complaint in this case was filed on June 9, 2006. The court decided a fully-briefed set of cross-motions for summary judgment on January 21, 2010. Unsatisfied with the court's resolution of those motions, the defendants moved for reconsideration a week later. The court granted that motion in part on April 13. The defense then moved for partial judgment on the pleadings (permission for which the court had granted) and requested clarification of the April 13 order. Meanwhile the plaintiff moved to vacate the reconsideration order (and, in the alternative, requested permission to file an out-of-time motion for partial summary judgment); that motion gave rise not only to the usual responsive briefing but also to a motion to file a sur-reply (which was itself followed by a response and a reply). One wonders how an apparently straightforward case—State Farm paid Michael Plambeck and his two companies for services performed when he lacked a valid Kentucky chiropractor's license and wants its money back—resulted in such voluminous and labyrinthine motion practice, but no matter: off we go.

**I. Clarification**

The defendants' request for clarification is really a thinly veiled motion that the court (again) reconsider the order granting summary judgment on State Farm's mistake claim. Its logic is as follows: the court's ruling on the motion for reconsideration stated that "[t]here is as yet no definitive

evidence" establishing when State Farm learned that Plambeck was not licensed, in the course of deciding that the statutes of limitation might provide partial defenses to State Farm's earlier claims. Thus it has not been established when there ceased to be a mistake, and summary judgment is not (or never was) appropriate because whether and for how long a mistake existed remains an open question that should go to the jury.

The first problem with this argument is that, in the court's opinion, it has been waived. At no time in all the previous briefing did the defendants object to the plaintiff's mistake claim on the ground that there was no mistake (or not as many mistakes as State Farm says there were). It never raised this argument as a potential collateral effect of the position it took in seeking reconsideration. The policy of the Rules of Civil Procedure is to avoid just the sort of piecemeal motion practice that this case has developed. *See*, *e.g.*, Fed. R. Civ. P. 12(g)(2). Allowing the defendants to interject a new argument at this stage would contravene that policy.

Anyway even on the merits the court is of opinion that the defendants' position is erroneous. The venerable rule on which State Farm's mistake claim is this:

> It is the settled rule in this state, adopted at an early date and followed by a long line of decisions, that whenever, by a clear or palpable mistake of law or fact essentially bearing upon and affecting the contract, money has been paid without consideration, which, in law, honor or good conscience, was not due and payable, and which, in honor or good conscience ought not to be retained, it may and ought to be recovered.

*Supreme Council, Catholic Knights of America v. Fenwick*, 183 S.W. 906, 910 (Ky. 1916) (*quoted in Phoenix Indemnity Co. v. Steiden Stores*, 267 S.W.2d 733, 734 (Ky. 1954)). *See also Riverside Ins. Co. v. McDowell*, 576 S.W.2d 268, 269 (Ky. Ct. App. 1979); K. A. Drechsler, Annotation, *Right of Insurer to Restitution of Payments Made Under Mistake*, 167 A.L.R. 470, 472 (1947). The crucial element, as should be clear from the court's discussion in the initial summary judgment opinion, is

whether "money has been paid without consideration." We concluded that chiropractic services performed by Plambeck or his sole-proprietor businesses (not the P.S.C. defendants) could not constitute good consideration because Plambeck was at the time operating unlawfully without a license. The date of State Farm's discovery is immaterial, because as a matter of equity Plambeck had no right to collect money for work illegally performed and has no right to keep it now.

So to sum up this clarification: the court will not revise its conclusion regarding summary judgment on State Farm's mistake claim on account of some uncertainty regarding the date on which State Farm learned that Plambeck was not licensed.

## II. Motion to Vacate, etc.

State Farm moves the court to vacate the April 13 reconsideration order on the ground that the evidence relied upon there was not "newly discovered," because it was not "previously unavailable." *See Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). Plaintiff did not raise this argument in its response to the motion for reconsideration, and we deem it waived. Accordingly the motion to vacate will be denied.

In the alternative, State Farm requests leave to file an out-of-time motion for partial summary judgment on the statute of limitations issue, because "the evidence in its possession will conclusively demonstrate [that] its claims were timely filed." Leave will be granted, and State Farm shall file its motion and memorandum in support within thirty days of the filing of the order that accompanies this opinion.

The defendants have filed a motion for leave to file a sur-reply so that they can address the Supreme Court's recent decision in *Krupski v. Costa Crociere S. p. A.*, 130 S.Ct. 2485 (June 7, 2010). The court is a bit perplexed by the vehicle the defense has chosen for bringing *Krupski* to our

attention: the case deals with the relation back of an amended complaint for purposes of statutes of limitations, but State Farm had no cause to raise that issue itself and the defendants have not filed any motion of their own challenging this court's prior conclusions on the relation-back issue. We thus tend to agree with the plaintiff that a new look at the relation-back question is not properly before the court, and that therefore the motion for leave to file a sur-reply should be denied.

However, to forestall the otherwise-inevitable filing of yet another motion in this matter, we will briefly address the sur-reply's argument. This will not take long, as there really isn't anything to address. *Krupski* affirms that "Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint." *Id.* at 2493. But that is just the standard this court applied in deciding the motion for reconsideration, and we reasoned:

> The original complaint purported to cover a span of time preceding the existence of the P.S.C.s, so it should have been perfectly obvious to defense counsel and Plambeck himself that the P.S.C.s were not the proper target of that subset of the suit's claims. It must have been intended for someone else, and that someone could only have been Plambeck.

The defense conjures an argument to the effect that Plambeck reasonably thought the failure to name him was a deliberate litigation strategy based around a preference for tarnishing the images of the P.S.C.s rather than recouping its money. Setting aside the apparent economic irrationality of such a strategy, it does not explain the fact upon which the court relied—viz., that the original complaint covered dates during which the only possible extant defendant was Plambeck himself. The fact that this was the consequence of a mistake and not a conscious litigation strategy is self-evident, and Plambeck should have known this to be the case. Accordingly the court will not revise its ruling regarding the relation back of the amended complaint.

## III. Motion for Partial Judgment on the Pleadings

Finally, the defendants have moved for judgment on the pleadings as to Count III of the complaint, which in their view does not state a plausible claim for relief. *See* Fed. R. Civ. P. 12(c); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). In the court's last opinion in this matter, we acknowledged being "unsure about what precisely is the nature of the cause of action asserted in Count III," and invited the plaintiff to offer an explanation. State Farm's response to this invitation is somewhat oblique, but it appears to be that Count III rests on the same general mistake theory asserted in Count II: "Under Kentucky Law, 'an insurer who made a payment under an erroneous belief induced by a mistake of fact that the terms of the insurance contract required such payment is entitled to restitution from the payee.'" (Resp. 5 (*quoting Phoenix Indemnity*, 267 S.W.2d at 734.) The difference is that the mistake alleged here pertains not to Plambeck's licensure but to whether certain medical bills paid by State Farm were reasonable and medically necessary for treatment of an injury or condition arising out of a covered automobile accident.

As noted above and in the court's original summary judgment opinion, the authority on which the *Phoenix Indemnity* court rested its statement of the law is K. A. Drechsler's 1947 A.L.R. annotation. Drechsler observed that the legal principle that a payment made under a mistake of fact may be recovered is typically "subject to the limitation that no recovery can be had by the insurer where, at the time payment was made, there was some doubt as to the existence of the fact from which the obligation of the insurer arose." 167 A.L.R. at 472. The rationale for this limitation is that where an insurer makes a mistake regarding an issue of fact, but acknowledges at the time of payment that there is a possibility that it is mistaken, it is taken to have assumed the risk of mistake

in order to avoid the difficulties that might arise from nonpayment. "Stated differently, according to this limitation of the general principle, no recovery can be had where there is some doubt as to the existence of the fact from which the obligation arises, since payment will be considered as in the nature of a compromise of a dubious liability." *Id.* at 476. The *Phoenix Indemnity* court, however, explicitly rejected this assumption-of-risk theory, at least where there is no actual—as opposed to judicially assumed—compromise of the claim. 267 S.W.2d at 735. Creating an assumption of compromise where none actually existed, in the court's view, would encourage insurance companies to delay payment of claims where any dispute exists at the outset, thus forcing the beneficiary to resort to litigation. *Id.* The court's preferred policy was to "avoid needless litigation and [to] encourage prompt payment of insurance claims" by allowing an insurer to recoup benefits where it later learns that the factual basis for paying them was mistaken. *Id.*

Recognizing that they cannot rely on the theory that the mistaken facts were in known controversy at the time of payment, the defendants argue that the mistake, to be actionable, must be "clear or palpable" at present—i.e. at the time relief is sought. (Def.'s Br. 4 (*quoting Phoenix Indemnity*, 267 S.W.2d at 734).) In the defendants' view, this means that both parties must agree that the mistake exists for the insurer to recover. There is however scant support for this proposition. None of the three cases cited by the defense offer any elaboration on the meaning of the phrase "clear or palpable," and the court is in agreement with the plaintiff that it cannot possibly require that there be no disagreement at the pleading stage. For one thing, in considering a motion to dismiss or for judgment on the pleadings, the court takes the non-moving party's pleadings as factually true and takes any contravening assertions in the movant's pleadings to be false. *Fritz*, 592 F.3d at 722; 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2004). Thus

under the Rules there simply cannot exist any meaningful disagreement at the pleading stage: any point of contention is resolved in favor of the non-moving party. Assuming the truth of the allegation that "claims submitted [to State Farm by defendants] were improperly billed and charged and/or were not medically necessary and/or were not causally related to a covered motor vehicle accident" (Compl. ¶ 21) establishes a "clear or palpable mistake" for present purposes. In addition, the only authority of which the court is aware regarding the meaning of "clear or palpable" indicates (sensibly) that it is a standard of proof to be applied by the finder of fact upon evaluating the evidence. *See Thomas v. Johnston*, 411 F.2d 669, 672 (6th Cir. 1969) ("Kentucky allows recovery in cases involving unilateral mistake of fact or law *where proofs of the mistake are 'clear or palpable.'*" (citations omitted) (emphasis added)); *id.* at 673 (McCree, J., dissenting) (agreeing that the "clear or palpable" standard applies to evaluation of the evidence). Count III does not fail for the alleged mistakes' lack of clarity or palpability.

The defendants next argue that to be actionable a mistake must be in some sense "objective," in that the disputed fact is "undisputedly one of two values." (Def.'s Br. 7.) Setting aside the fact that the defense has cited no cases expounding this theory (it is extrapolated from the facts of the Kentucky cases out of which the mistake theory arose), the defendant has not provided any reason for thinking that it would require dismissal of Count III. Improper billing, medical necessity, and causal relationships are factual questions that a jury can decide as to each challenged procedure. The possibility that individual observers might disagree about the interpretation of the evidence does not turn facts into mere opinions. Either the bills submitted were proper under the law and the relevant insurance policies or they weren't; either the procedures were medically necessary or they weren't;

and either the treated injuries were caused by covered accidents or they weren't. The defendants' attempt at distinguishing this case from the relevant precedents is unavailing.

The defense next argues that because there was no direct insurance contract between the various chiropractic facilities and State Farm, the mistake rule does not apply here. However, there is no precedent announcing this rule and the court sees no justification for doing so here. State Farm's allegation is that it mistakenly believed it was required under the terms of its insurance contracts to pay bills submitted to it by the defendants; it subsequently learned of its error and demanded (through litigation) that it be repaid. The equitable remedy sought in this case is premised on the idea that the defendants obtained and continue to possess money to which they have no right because State Farm was never properly obligated to pay it. State Farm claims it paid pursuant to contracts of insurance between it and its insureds. No contract between State Farm and the chiropractic facilities is necessary.

The defendants' final argument rests on the Kentucky Supreme Court's decision in *Neurodiagnostics, Inc. v. Ky. Farm Bureau Mut. Ins. Co.*, 250 S.W.3d 321 (Ky. 2008). There the court held that changes to the Kentucky Motor Vehicle Reparations Act (MVRA) had left medical providers with no statutory provision under which to sue insurers for failure to pay. The defense argues that this principle applies equally in reverse, leaving insurers with no means of recouping money directly from medical providers. (They argue that State Farm should sue its insureds instead.) There are several problems with this argument. First is that the defendants have not cited any decision in which an insurer was forced to proceed against an insured rather than against an overpaid medical provider. The court's task in this diversity case is to predict what the highest state court would do, and we are not convinced that it would bar State Farm's suit here. This is in part because

Count III does not rely on any statutory authority, but rather on a judicially announced rule permitting insurers to recover mistaken payments. In addition, if "the insured is the party that is ultimately responsible for payment" to the medical provider, *id.* at 329, it is the medical provider who should be tasked with seeking that payment. If an insurer mistakenly paid for unnecessary procedures, Kentucky law might then arguable permit it to recover from the party to whom payments were made. That party could then seek payment from the recipient of the unpaid-for services, although the possibility exists that the same mistakes relied upon by State Farm might also absolve the recipients of responsibility to pay if the services were unnecessary or were performed without legal authorization.

    The court thus finds each of the defendant's arguments for dismissing Count III wanting. Its motion will be denied. A separate order will effectuate this opinion's rulings.