UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY         PLAINTIFF

v.         CIVIL ACTION NO. 3:06-CV-281-S

NEWBURG CHIROPRACTIC, P.S.C.,
CANE RUN CHIROPRACTIC, P.S.C., and
MICHAEL PLAMBECK         DEFENDANTS

## **MEMORANDUM OPINION**

This matter is before the court on the motion of plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") for partial summary judgment on the issue of the timeliness of its claims (DN 173). For the reasons set forth herein, State Farm's motion will be **GRANTED**.

**I.**

As this court explained in a prior Memorandum Opinion addressing the parties' cross-motions for summary judgment, "[t]his case involves an insurer (State Farm) seeking to recoup monies paid to several chiropractic offices on the ground that their practices were unlicensed at the time of the payments, and that State Farm never would have paid the claims had it known that fact." Memorandum Op. (DN 130) at 1. The defendants in this matter are Newburg Chiropractic, P.S.C.; Cane Run Chiropractic, P.S.C.; and their principal, Michael Plambeck.

This court set forth the undisputed material facts of this case in its previous Memorandum Opinion as follows:

> Although Plambeck held a chiropractic degree, he allowed his Kentucky chiropractic license to lapse for over a decade before being reinstated on May 2, 2005. He nonetheless operated chiropractic clinics during the period when he held

> no Kentucky license: first as the Newburg Chiropractic Clinic (an unincorporated entity), and then as the owner of the co-defendant P.S.C.s after they were incorporated in February 2004.[1] Kentucky law requires that a person be licensed in order to practice chiropractic or to "hold himself out to be a doctor of chiropractic," and specifically states that "[o]wnership or operation of a chiropractic facility within this state constitutes the practice of chiropractic requiring licensure." KRS 312.018(1), 312.145(3). Plambeck's role in the chiropractic businesses involved in this litigation thus appears to have been illegitimate under Kentucky law. State Farm was evidently unaware of this fact, and between January 1, 2000 and the date of Plambeck's re-licensing it paid him and his companies several hundred thousand dollars for treatment provided under its insurance policies.[2] After learning that Plambeck had not been licensed in Kentucky, State Farm filed suit against the P.S.C.s. It then discovered that they had only recently been organized and amended its complaint to state a claim against Plambeck in his capacity as proprietor of the unincorporated clinic that preceded the P.S.C.s. After discovery, the parties submitted cross-motions for summary judgment.
>
> *Id.* at 1–2 (footnotes in original).

In the same Memorandum Opinion, this court held, among other things, that State Farm's claims against Plambeck were timely filed because they were brought within five years of State Farm's discovery of Plambeck's unlicensed status. *See id.* at 4–5. We concluded that KY. REV. STAT. § 413.120(12), which sets forth the statute of limitations for fraud or mistake actions, applied in this case. *Id.* at 3–4. The statute of limitations in KY. REV. STAT. § 413.120(12) does not begin to run until the date that the fraud or mistake is discovered, KY. REV. STAT. § 413.130(3), or in the exercise of reasonable diligence should have been discovered. *Hernandez v. Daniel*, 471 S.W.2d 25, 26 (Ky. 1971). Applying these standards, we concluded that the exercise of reasonable diligence did not require State Farm to investigate the legal status of Plambeck and his

---

[1] Defendants claim that ownership of both P.S.C.s was actually held by a licensed chiropractor (rather than Plambeck) at the relevant times, but this fact (which State Farm disputes) does not bear on the present motions.

[2] These services were rendered both to State Farm's own customers and to third parties for whose treatment it was obligated to pay under its no-fault personal injury protection policies.

businesses every time it paid one of their bills. Memorandum Op. at 4–5. We held that the five-year statute of limitations did not begin to run until State Farm actually discovered Plambeck's status, which we ascertained had occurred in May 2005. *Id.* at 5. Accordingly, we held that State Farm's claims were not time-barred.

On January 28, 2010, Plambeck filed a motion for reconsideration, bringing to this court's attention a letter dated April 20, 2004, in which State Farm Claim Representative Linda Stratman stated: "It is our understanding that Michael Kent Plambeck is the owner of Newburg Chiropractic. The Kentucky Board of Chiropractic Examiners confirms Mr. Plambeck is not a licensed chiropractor in the state of Kentucky." Memorandum Op. of Apr. 13, 2010 (DN 145) at 2. Upon review of this newly discovered evidence, we concluded: "State Farm knew of Plambeck's lack of license more than a year before the court had previously thought; but the letter does not establish precisely what is the relevant date. There is as yet no definitive evidence of what that date is. Whether the statute of limitations bars recovery thus remains an open issue to be submitted to the jury."[3] *Id.*

State Farm now moves for summary judgment on the issue of the timeliness of its claims. In support, it has submitted an affidavit from Stratman, in which she states that "[o]n or about the latter part of 2003," she "was in the process of conducting an investigation into the activities of Defendants regarding billing submitted for reimbursement." Stratman Aff. (DN 173-2) ¶ 3. Stratman states that she contacted the Kentucky Board of Chiropractors sometime between January 2004 and March 2004 and learned that Plambeck was unlicensed. *Id.* ¶ 4. State Farm has

---

[3]We also held in this Opinion that State Farm's claims against Plambeck related back to its original complaint, which was filed June 9, 2006. Thus, all of State Farm's claims in this matter are deemed to have been filed on this date.

also submitted the affidavit of John Bush, its attorney, who states that he received a request from State Farm on or about May 25, 2004 to analyze the legal implications of Plambeck's non-licensure, Bush Aff. (DN 173-3) ¶ 2, and that he delivered his opinion on the matter on or about June 7, 2004. *Id.* ¶ 3. State Farm argues that it was through the delivery of this legal opinion that it became aware of the fraud allegedly perpetuated against it, and that therefore summary judgment is appropriate on the timeliness of its claims.

## II.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact arises when there is "sufficient evidence on which the jury could reasonably find for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The evidence presented must be construed in the light most favorable to the non-moving party. *Blakeman v. Mead Containers*, 779 F.2d 1146, 1150 (6th Cir. 1985).

As set forth *supra*, the statute of limitations for State Farm's claim against defendants was triggered when State Farm discovered or should have discovered with reasonable diligence that it was harmed. We have previously rejected the proposition that State Farm, under the facts that we have been presented in this case, had a duty to inquire into the status of Plambeck's license. In our previous Memorandum Opinion, we concluded that the triggering date for the statute of limitations was the date State Farm actually learned that Plambeck was not licensed. We did not waver from that conclusion on reconsideration, but altered our initial decision when presented with evidence that called the date of State Farm's knowledge into question.

We have now been presented with evidence in the form of an affidavit from Stratman establishing that the investigation into Plambeck's billing practices was in progress in the latter part of 2003, and that Stratman actually learned that Plambeck had let his license lapse at some point in the first three months of 2004. Plambeck argues that Stratman's affidavit "proves nothing" because it does not show that State Farm as an entity was unaware of Plambeck's status. He speculates that because State Farm is a large company with many employees, individuals other than Stratman may have been involved in the investigation and could have discovered Plambeck's status before the dates Stratman sets forth in her affidavit. However, Plambeck presents no concrete evidence to support these claims. In order to survive summary judgment, a non-movant must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted). Plambeck has not done so here.

Plambeck makes the additional argument that the portion of Stratman's affidavit on which we rely "contains broad conclusory statements and does not contain sufficient factual detail to show that Ms. Stratman has personal knowledge of the statements made." Def.'s Resp. (DN 176) at 6. We disagree. Paragraphs 3 and 4 of Stratman's affidavit state:

> On or about the latter part of 2003, I was in the process of conducting an investigation into the activities of Defendants regarding billing submitted for reimbursement by Defendants to State Farm.
>
> Between January 2004 and March 2004, I contacted the Kentucky Board of Chiropractors and learned Dr. Michael Plambeck had not been licensed for the dates of service and billing reimbursement requests made the basis of this suit, despite the fact that the Defendant chiropractic clinics owned by him had submitted medical bills to State Farm between those dates.
>
> Stratman Aff. ¶¶ 3–4.

Although not extensively detailed, we find Stratman's affidavit sufficient to establish the fact necessary to resolve this motion. Because State Farm has shown that it learned of Plambeck's unlicensed status in January 2004 at the earliest, and because Plambeck has offered no evidence that presents a genuine issue of fact for trial, State Farm's motion for partial summary judgment will be granted.[4]

### III.

We next address Plambeck's request for additional time to respond to State Farm's motion, which he claims is necessary to allow for additional discovery. Plambeck seeks "all of the documents that reflect [the] alleged events" in State Farm's motion, "including whatever documents reflect the actions described in the Stratman Affidavit and the Bush Affidavit." Mot. to Extend Time (DN 175) at ¶ 4.

It is possible that the documents would reveal evidence relevant to Plambeck's statute of limitations argument. More information about the course of State Farm's investigation might, for instance, show that State Farm should have inquired into Plambeck's licensure at some point before it actually did, thus triggering the statute of limitations. However, allowing Plambeck additional time to access and review the documents he seeks would not alter our result.

Stratman states in her affidavit that an investigation by State Farm was in progress in the latter part of 2003. Although Stratman's affidavit does not definitively fix the date of the beginning of the investigation, Plambeck has not suggested or offered any evidence to suggest

---

[4]Because we find Stratman's affidavit dispositive, we need not address State Farm's argument that the statute of limitations was not triggered until it acquired knowledge of Plambeck's learned from its attorney that Plambeck's lack of a license might give rise to a legal claim. In a similar vein, we need not address Plambeck's objections to this argument or the evidence used to support it.

- 6 -

that the investigation began at some point before 2003. Even assuming that State Farm discovered something during the course of its investigation of Plambeck that should have alerted it to Plambeck's lack of a license, the five-year clock on its claims would have started to run only at some point during 2003. State Farm's claims thus would have been timely filed regardless of the precise point in the investigation when State Farm knew or should have known that Plambeck was unlicensed. Because the extension Plambeck requests would be futile, we will deny his motion for extension of time.

**IV.**

Finally, we will deny Plambeck's motion to unseal the documents proffered by State Farm in support of its motion. These documents pertain to communications between State Farm and its attorney, and are not relevant to the analysis of the statute of limitations issue. They therefore need not be unsealed.

A separate order will issue in accordance with this opinion.