UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY                                                                         PLAINTIFF


v.                                                                   CIVIL ACTION NO. 3:06-CV-00281


NEWBURG CHIROPRACTIC, P.S.C., *et al.*                                                    DEFENDANTS


### MEMORANDUM OPINION

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") has filed a motion for summary judgment (DN 232). The motion has been fully briefed and is ripe for decision.

### I.

State Farm brought this case in an attempt to recover money it paid pursuant to personal injury protection ("PIP") insurance policies to chiropractic offices on the ground that the practices were unlicensed at the time of the payments. Defendant Michael Plambeck had previously held a Kentucky chiropractic license, but allowed it to lapse for a number of years before being reinstated on May 2, 2005. Nevertheless, he operated Newburg Chiropractic Clinic, an unincorporated entity, during the time that he did not hold a Kentucky license. Under Kentucky law, "[o]wnership or operation of a chiropractic facility within this state constitutes the practice of chiropractic requiring licensure." KRS § 312.145(3). State Farm was unaware that Plambeck was not licensed, and between January 1, 2000 and the date of Plambeck's re-licensing it paid him and his companies for treatment provided to its insureds.

After learning that Plambeck had not been licensed, State Farm filed this action. In an order and accompanying opinion dated January 19, 2010, this court granted State Farm partial summary judgment as to its claim against Plambeck for restitution of fees it paid to Plambeck by mistake. The court held that State Farm was "entitled to recover any fees it paid to Plambeck during the period beginning in 2000 when he operated as a sole practitioner." However, the court noted that the record did not contain "full proof of damages, so the burden [wa]s still on [State Farm] to prove its losses."

State Farm has now filed a motion for summary judgment on three issues relating to damages. First, State Farm argues that it is entitled to recover funds it paid to individual licensed chiropractors that worked at Plambeck's unincorporated clinic during the relevant time period. Second, State Farm contends that it is entitled to recover in instances where it paid funds to Plambeck under a PIP insurance policy and then recovered that amount through subrogation from itself as a liability insurer. Finally, State Farm argues that the court should award it compound, rather than simple, prejudgment interest.

## II.

To prevail on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is sufficient evidence on which the jury could reasonably find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party must present sufficient probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at

trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). The evidence must be construed in the light most favorable to the non-moving party. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

**A. Money Paid Directly to Individual Licensed Chiropractors**

State Farm argues that it is entitled to recoup funds it paid directly to individual chiropractors that worked for Plambeck while he owned and operated Newburg Chiropractic as a sole proprietor. State Farm contends that it does not matter if the payments were directed to individual chiropractors that worked at the clinic, since the funds were for the benefit of Newburg Chiropractic.

In its January 19, 2010 opinion determining that State Farm was entitled to restitution of all the funds it paid to Plambeck, this court stated the following:

> A trickier problem comes with the recognition that at least some of the chiropractic services performed while Plambeck was operating as a sole proprietor were rendered by chiropractors with valid licenses. . . . It is hard to see how those services would not count as valid consideration: the person who performed them had adequately demonstrated to the state that he was qualified and competent to do so. The public had been protected from the risk of harm associated with unlicensed practitioners, and there is nothing in the record to show that the patients were unsatisfied with the treatment they received. So there is something to the defendants' argument that valid consideration was furnished, and that restitution is therefore no longer available even if State Farm could have refused to pay the bills when they were issued on the ground that Plambeck was unlicensed.
>
> But recall that restitution is in essence an equitable remedy. Plambeck had no right to issue invoices or collect fees for chiropractic services: Such activities constitute the practice of chiropractic, and they therefore require licensure. He should not be permitted to profit from this illegal activity. While it is true that the clinic's patients (and thus in some sense State Farm) received good consideration for the insurance payments, allowing State Farm to recover here would not adversely affect either of the innocent parties: The patients have already been treated, and the licensed practitioners have (we suppose) already been compensated for their work through salary and/or other benefits. Plambeck

> operated a chiropractic facility without a license at his own risk, and the equities of the case are against him. We therefore hold that State Farm is entitled to recover any fees it paid to Plambeck during the period beginning in 2000 when he operated as a sole practitioner

(January 19, 2010 Memorandum Opinion, DN 130 at 14-15).

Applying that language to the issue here, the court finds that the question is whether or not the payments State Farm made to the individually licensed chiropractors were actually fees paid to Newburg Chiropractic (and by extension to Plambeck). Initially, the court notes that State Farm repeatedly states in its papers that it made the payments to the individually licensed chiropractors pursuant to bills that were submitted to it by Newburg Chiropractic. That may be true, and if it is, that would be powerful evidence that the checks issued by State Farm to the individually licensed chiropractors were indeed fees paid to Newburg Chiropractic. Unfortunately, State Farm did not see fit to provide this court with any of those bills. Therefore, the court cannot rely upon them in determining whether State Farm is entitled to summary judgment.

Instead, the court turns to the evidence that State Farm actually submitted to the court. Specifically, State Farm submitted copies of checks it wrote to individual chiropractors. A number of the checks were endorsed with a Newburg Chiropractic stamp and deposited at Fifth Third bank. The court finds that the evidence as to those checks is sufficient for a grant of summary judgment in State Farm's favor. That the checks were endorsed solely by Newburg Chiropractic and not by the individual chiropractors shows that they were actually fees that were being paid to Newburg Chiropractic. Thus, in accordance with this court's prior holding that State Farm is entitled to recover any fees it paid to Plambeck during the period beginning in 2000 when he operated as a sole practitioner, the fact that State Farm's checks to individual

licensed chiropractors were endorsed by Newburg Chiropractic is sufficient to entitle State Farm to restitution from Plambeck for those payments.

However, some of the payment checks presented to this court by State Farm are not endorsed by Newburg Chiropractic, but instead are endorsed by individuals. The evidence is insufficient to demonstrate that the individuals that endorsed the checks did so on behalf Newburg Chiropractic. Although those checks were deposited at a Fifth Third Bank – like the checks that were endorsed by Newburg Chiropractic – that is far from conclusive that the checks were sent to Newburg Chiropractic's account. State Farm also submitted its own records of some of the checks at issue, which list the taxpayer identification number ("TIN") of the payee. In State Farm's motion papers, it states that the taxpayer identification number on those records was Plambeck's social security number. However, the evidence that State Farm included that number in its own records is insufficient to show that checks made out to an individual licensed chiropractor and endorsed by a person other than Plambeck or Newburg Chiropractic were actually fees paid to Plambeck. Accordingly, as to those payments, summary judgment is denied.[1]

**B. "Self-Subrogation"**

For certain of the funds State Farm paid to Plambeck pursuant to a PIP insurance policy, it later recovered those funds through subrogation from a liability insurer. In the court's January 19, 2010 memorandum opinion, the court stated:

---

[1] State Farm states in its papers that an evidentiary hearing is "likely warranted" – possibly with limited discovery – as to whether certain payments constituted fees paid to Plambeck. The court will simply decide the summary judgment motion at this point and leave it to the parties to proceed thereafter as they feel appropriate.

> Defendants argue that State Farm should not be permitted to recover in this suit any sums that it has thus already secured through subrogation. The Court and the parties here agree, and any amount awarded to State Farm will be limited to losses for which it has not otherwise been compensated

(January 19, 2010 Memorandum Opinion, DN 130 at 6). State Farm argues that in instances where it paid funds to Plambeck as a PIP insurer and then recovered those funds through subrogation from itself as a liability insurer, it is entitled to recoup the funds from Plambeck.

However, in State Farm's complaint, it specifically requests funds it paid to Plambeck as a PIP insurer, not funds it paid through subrogation to other insurers. Thus, while State Farm contends that there is no legal reason to treat it differently depending on whether it made a payment as a PIP carrier or a liability carrier, this court need not decide whether that is true. Instead, it is enough to say that if State Farm wished to recover against Plambeck for payments it made as a liability carrier to a PIP carrier – whether that PIP carrier is State Farm or a different insurance company – it must bring such a claim in a complaint. Having failed to do so here, it will not be entitled to recover for payments it made as a liability carrier.

The parties also dispute how to calculate damages in the instance where State Farm as PIP carrier made payments to Plambeck and other medical providers but later received less than 100% of those payments through subrogation from itself as liability carrier. State Farm contends that in instances where it wore two hats – as PIP carrier and as subrogee – it is entitled to recover damages from Plambeck in an amount that would allow it to recoup the total amount it paid out in PIP. In other words, State Farm urges that it is entitled to damages from Plambeck equal to the difference between its total PIP payments and the amount it recovered through subrogation.[2]

---

[2] State Farm notes that, under its proposed method of calculating damages, if the amount it paid Plambeck in PIP payments is less than the difference between its total PIP payments and the

continue...

However, State Farm is only entitled to recover money it paid to Plambeck in PIP payments, not money it paid out in PIP payments to other providers. State Farm's method pays no mind to this distinction, instead proceeding from the premise that State Farm is entitled to recover all of its PIP payments, whether to Plambeck or another provider. The court believes that a better method of calculating damages would be to credit the percentage of total PIP payments State Farm recovered through subrogation against the payments State Farm made to Plambeck, with Plambeck responsible for the remainder that was paid to him. In other words, if State Farm made $10,000 in total PIP payments in a case, but recouped only $8,000 through subrogation, then State Farm would have recovered 80% of its total PIP payments. Assuming that State Farm paid $5,000 in PIP payments to Plambeck, for purposes of assessing damages State Farm is deemed to have received $4,000 (80% of its PIP payments to Plambeck) through subrogation and Plambeck would owe damages of $1,000. Such a method better captures the distinction between the PIP payments State Farm made to Plambeck, for which State Farm is entitled to recover, and the PIP payments State Farm made to other medical providers, for which State Farm has no right of recovery from Plambeck.

**C. Simple or Compound Prejudgment Interest**

Finally, State Farm asserts that the court should award it compound prejudgment interest, while Defendants argue that simple interest should apply. In the Sixth Circuit, a federal court sitting in diversity applies state law to assess prejudgment interest. *F.D.I.C. v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000). In Kentucky, for "liquidated" damages,

---

[2]...continue
amount it recovered through subrogation, then Plambeck would owe State Farm only the amount of PIP payments that were made to him.

prejudgment interest is set at a rate of eight percent per annum, as provided by KRS § 360.010.[3] *Poundstone v. Patriot Coal Co., Ltd.*, 485 F.3d 891, 903 (6th Cir. 2007).

"[P]rejudgment interest has traditionally been simple interest" in Kentucky, but a trial court can award compound interest where fairness so requires. *Reliable Mech., Inc. v. Naylor Indus. Servs., Inc.*, 125 S.W.3d 856, 858 (Ky. Ct. App. 2003). In *Naylor*, the court found as follows: "Reliable has deprived Naylor of the use of the money rightfully due and owed to it for nearly eight (8) years. Arguably, Naylor would have been capable of earning compound interest on its money during this lengthy time period." *Id.* Thus, the court stated, an "award of compounded pre-judgment interest reconciles and adjusts that inequitable result by providing to Naylor a sum that it might have earned had its money been tendered in a timely manner." *Id.*

State Farm contends that equity calls for compound prejudgment interest here because Plambeck wrongfully took "hundreds of payments" from State Farm by providing unlicensed medical services in contravention of public policy. According to State Farm, compound interest will "protect the people of Kentucky from similar action by other service providers." State Farm also contends that Plambeck began accepting the payments from State Farm over 12 years ago, thus depriving State Farm of the use of those funds for a lengthy period of time. In response, Defendants argue that, given that prevailing market interest rates in the United States have been historically low for many years, "an award of 8% simple interest will more than adequately compensate Plaintiff for any 'loss of use' the Plaintiff had of said funds."

The court will decline to waver from the traditional rule that simple interest applies. To be sure, State Farm is correct that Plambeck's unlicensed provision of medical services was

---

[3] There is no dispute that the damages are liquidated in this case.

contrary to public policy and that a number of years have passed since State Farm began making the payments to Plambeck. Nevertheless, Defendants are also correct that interest rates have been at historic lows for years and an award of 8% simple interest will be sufficient to ensure that State Farm is provided "a sum that it might have earned had its money been tendered in a timely manner." *Naylor*, 125 S.W.3d at 858.

### III.

In sum, State Farm's motion for summary judgment will be granted in part and denied in part in the manner detailed above. A separate order will issue in accordance with this opinion.

November 1, 2012

Charles R. Simpson III, Judge
United States District Court

D03